Christopher Alexander Olsen, SBN 236928
**OLSEN LAW OFFICES**
1010 Second Avenue Suite 1835
San Diego, CA 92101
619-550-9352
619-923-2747 (fax)
caolsen@caolsenlawoffices.com

Richard J. (Rex) Burch
*Admitted pro hac vice*
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Facsimile:  (713) 877-8065
rburch@brucknerburch.com

Attorneys for Haukland and the Classes

## IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATH HAUKLAND, individually and on behalf of others similarly situated,<br><br>            Plaintiffs,<br><br>                    vs.<br><br>THINK RESOURCES n/k/a RANDSTAD ENGINEERING,<br><br>            Defendant. | **Case No. 14-cv-00145-H-DHB**<br><br>**HAUKLAND'S MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT**<br><br>Hearing Date: Monday, March 30, 2015<br><br>Time:10:30am<br><br>Location: Courtroom 15A |

## 1.  Introduction.

This is a class and collective action seeking unpaid overtime under federal and state law. Heath Haukland alleges Randstad Professionals US, LP violated federal and state overtime laws by paying hourly employees at the same hourly rate for all hours worked, including hours in excess of 8 and 12 in a day, and 40 in a workweek. Randstad, of course,

sees things differently, asserting Haukland (and any workers like him) are highly compensated and skilled employees who are exempt from any applicable overtime laws.

The parties attended an ENE before Judge Bartick that, due to the parties' radically different views of the case, failed miserably. So for nearly a year, the parties slugged it out in litigation. But after taking depositions, exchanging discovery, producing and reviewing thousands of pages of documents, as well as filing and responding to motions, the parties mediated this case before experienced mediator Michael E. Dickstein. With Mr. Dickstein's assistance, the parties were ultimately able to reach a settlement with respect to an agreed upon class. *See* Exhibit A, Settlement Agreement & Release of Claims (Settlement).

**2. Background.**

**A. Overview of Haukland's Claims and Randstad's Defenses.**

Heath Haukland worked for Randstad from February 21, 2011 until January 8, 2012 (when he was hired directly by Randstad's client). Haukland alleges Randstad paid him by the hour, but did not pay him time and a half for overtime as required by the Fair Labor Standards Act (FLSA) and California state law. *See* Dkt. 27 (Amended Complaint); 29 U.S.C. § 207(a); Cal. Labor Code § 510. Haukland alleges that instead of paying him overtime, Randstad paid him (and other workers like him) straight time for hours over 8 and 12 in a day, and over 40 in a workweek. *Id.* He alleged this "straight time for overtime" violated the requirement that overtime is to be paid at time-and-a-half (at least). *See Reich v. Waldbaum, Inc.*, 52 F.3d 35, 40-41 (2d Cir. 1995) (paying straight time for overtime violates the FLSA); *Negri v. Koning & Associates*, 216 Cal. App. 4th 392, 397-98, 156 Cal. Rptr. 3d 697, 700-01 (2013) (same with respect to California law). Haukland also alleged Randstad's treatment of these workers as "exempt" from applicable wage and hour laws resulted in other damages, such as the denial of meal/rest breaks, as well as the payment of final wages. *See* Dkt. 27 (Amended Complaint).  Haukland asserted that, as a result, Randstad owed him (and other workers like him) overtime and other damages under the law. *Id.* He sought to bring his claims as an FLSA collective action (for workers outside California) and a Rule 23 class action (for workers in California).

Randstad had a different take on the facts and law. To begin, Randstad alleged that its pay plan complied with federal law because it guaranteed Haukland at least $455 a week and paid him additional compensation for hours worked in excess of forty hours a week. 29 U.S.C. § 541.604 (authorizing employers to pay exempt employees on a "minimum guarantee plus extras" basis). Indeed, Randstad's former Senior Vice President of Human Resources Robert Campbell testified (and provided documents showing) he contacted the United States Department of Labor regarding Randstad's pay plan and obtained its approval of the plan before its implementation. Randstad also noted Haukland (and others like him) earned more than $100,000 on an annualized basis. *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2173 (2012) (suggesting pharmaceutical salespeople who "earned an average of more than $70,000 per year … are hardly the kind of employees that the FLSA was intended to protect."). In sum, Randstad argued Haukland's claims were without merit.

**B. Despite Good Faith Efforts by All, the ENE Fails.**

Consistent with the practice of this Court, the parties attended an ENE session on April 24, 2014. *See* Dkt. 7. All parties took the ENE process seriously, providing the required ENE statements. Randstad's in-house lawyer, as well as the primary lawyers for the parties, traveled from as far away as Massachusetts to attend the ENE in person. But given the parties' widely disparate views on the case, it is little surprise that the ENE session with Judge Bartick was a flop. *See* Dkt. 9.

**C. The Parties Litigate, Completing Virtually All Class Discovery.**

The parties spent the next 8 months aggressively litigating their positions. Throughout, Randstad continued its efforts to eliminate (or at least limit) this action. For example, Randstad filed both a motion to dismiss (Dkt. 16) as well as a motion for summary judgment (Dkt 17). While Haukland successfully opposed the motion to dismiss and the summary judgment motion was dismissed without prejudice. *See* Dkts. 19 & 26, Randstad clearly believed it had strong substantive and procedural defenses to this case.

It was only after nearly all class discovery was complete that the parties were able to seriously discuss resolution. By that point, Haukland had served three sets of discovery on

3

Randstad. Randstad had served discovery (including 90 requests for production) on Haukland. Both parties had taken depositions (and had traveled to Arizona, California, and Georgia). And, of course, a great deal of information had been exchanged, including payroll and time records for more than 100 employees. Even then, it quickly became clear that a third-party's assistance might be necessary if a settlement was going to be reached.

### D. The Mediation Fails, But Ultimately Produces a Settlement.

To aid their discussions, the parties relied on experienced wage and hour mediator Michael Dickstein. *See* http://www.dicksteindisputeresolution.com/cv_employment.pdf. A *cum laude* graduate of Harvard University and Harvard Law School, Mr. Dickstein regularly mediates complex employment and business litigation cases. *Id.* Having resolved successfully hundreds of class actions in mediation, Mr. Dickstein regularly writes and lectures on the ADR process. *Id.* But even with Mr. Dickstein's assistance, the parties were not able to reach a settlement at mediation. Ultimately, however, and after significant work by all the parties, the proposed Settlement was reached. *See* Settlement (Exhibit A), *passim*.

Under the terms of the proposed settlement, California Class members are eligible to recover approximately 40% of the potential value of their claims, including full recovery of their alleged unpaid overtime.  The FLSA Collective are eligible to recover approximately 50% of the potential value of their claims, including full recovery of their alleged unpaid overtime. In exchange for this opportunity, all class members (except Haukland) will release only their wage and hour claims.

### 3.  Summary of the Settlement.

### A.  The Settlement Classes.

The proposed "Settlement Classes" consist of the "California Class" and the "FLSA Collective." *See* Settlement at § 4. The California Class covers: "All hourly workers employed by [Randstad] who were paid at 'straight time' rates for hours worked in California in excess of 8 in a day and/or 40 in a week during the California Claims Period from January 21, 2010 to June 30, 2014 and who do not opt out of the certified class[.]" *Id.* The FLSA Collective covers: "All hourly workers employed by Defendant in the states of Connecticut, Illinois,

Iowa, Maryland, Pennsylvania, New York, South Carolina and Utah who were paid at 'straight time' rates for hours worked in excess of 40 in a week from February 19, 2012 up to and through June 30, 2014 … and who opt into the FLSA Collective during the opt-in period[.]" *Id.* The composition of the FLSA Collective was determined by reference to certain state laws with additional salary (or salary disclosure) requirements that, in Class Counsel's estimation, made them more likely to succeed on their claims.

**B. The Money.**

The settlement provides for a $1,250,000 "Maximum Settlement Amount." *See* Settlement at § 7. This amount includes all class member payments (including all employee-side payroll taxes), the Class Service Payment to the Class Representative, the claims administrator fees, and all attorneys' fees and costs. *Id.* However, the Maximum Settlement Amount does *not* include Randstad's share of employment taxes. Instead, Randstad is responsible for its portion of the employer-side payroll taxes. *Id.*

**1)   The Class Member Payments.**

Class Members who timely return a claim form will receive a payment based on the actual overtime hours worked and the individual Class Member's hourly rate during the applicable period, as established by Randstad's records. *See* Settlement at § 13. Since everyone agrees the members of both the California Class and the FLSA Collective were paid for hours above forty at their alleged "hourly rate," the workers had an incentive to accurately report their time. And because Randstad is compensated (at least in part) based on the number of hours worked by its employees, Randstad did not have an incentive to hold down the number of reported hours. Therefore, using Randstad's records to calculate the individual settlement shares makes good sense.

Each Class Member's share of the settlement will be based on their actual hourly rate and overtime hours worked during the relevant time period.  Of course, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998) (internal citations and quotation marks omitted). Nonetheless, the class members will receive a substantial

proportion of their potential damages, including all of their alleged unpaid overtime.  Based on Class Counsel's calculations, this Settlement will pay: (a) each claiming California Class member approximately 40% of the potential value of his or her claim, including full recovery of his or her alleged unpaid overtime; and (b) each consenting FLSA Collective member approximately 50% of the potential value of his or her claim, including full recovery of his or her alleged unpaid overtime. And these amounts are *net of all attorney's fees and costs (including costs of administration and the proposed Class Service Payment).* Respectfully, Haukland asserts the Settlement represents a robust recovery.

This is particularly true given that the Settlement Classes consist of mostly short term employees (a fact that is hardly surprising since Randstad is a staffing company). For example, although the California Class members' tenures average approximately 4 months, their settlement shares average of $9,269.23. Stated differently, California Class members are eligible to recover an average of more than $500 for each week worked. And despite a similar tenure of approximately 4 months, the FLSA Collective members' allocations provide, on average, for claims worth an average of more than $250 per workweek.

These numbers are net of attorney's fees and costs. In addition, Haukland used "best case scenarios" in calculating Randstad's liability – including, *e.g.,* penalties. *Cf. Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 955 (9th Cir. 2009) (court may calculate settlement reasonableness without considering penalties). So *after* all costs of admission have been deducted, the Settlement still offers both groups more than 40% of not just a reasonable estimate of their likely recovery, but of their absolute best day at the ballpark. This is certainly worthy of preliminary approval and presentation to the class. *Ma v. Covidien Holding, Inc.,* Case No. SACV 12–02161–DOC (RNBx), 2014 WL 360196, at *5 (C.D.Cal. Jan.31, 2014) (settlement providing "9.1% of the total value of the action" was "within the range of reasonableness" as it provided approximately $2,500 per person to the class members, *before* fees, costs and enhancements were subtracted); *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 444 (E.D.Cal.2013) (finding a recovery of approximately 30 percent of estimated damages to favor settlement).

**2)  Haukland's Class Service Payment.**

Under the Settlement, Haukland will receive a Class Service Payment of $15,000. *See* Settlement at § 6. This payment is consistent with payments given in wage and hour litigation. *See, e.g., In re M.L. Stern Overtime Litig.*, 2009 WL 3272872, at *3-4 (S.D. Cal. Oct. 9, 2009) (awarding class representatives $15,000 each). Haukland, in particular, has delivered outstanding service to the California Class and the FLSA Collective. In addition to performing the typical duties of a class representative such as responding to discovery, providing a deposition, and assisting class counsel, Haukland consistently refused Randstad's efforts to stymie this class and collective action.

For example, Haukland refused what Randstad termed a tender of "maximum relief" - some $48,083.76 – on his FLSA claim prior to collective certification. *See* Dkt. 16. Had Haukland accepted this tender, Randstad would almost certainly have argued he could no longer serve as the lead plaintiff for the FLSA collective. *Cf.* Dkt. 16-1 at pp. 6-7. In addition, if Haukland's federal case were dismissed based on its tender of "maximum relief" as Randstad requested, the California Class' claims would had been delayed (at the very least). By refusing Randstad's efforts to "pick off" his claim, Haukland put his money where his mouth was and demonstrated his commitment to the classes. Haukland's proposed Class Service Payment of $15,000, for which he is also signing a general release, is reasonable.

**3)  Claims Administration Fees.**

After obtaining several quotes from claims administration companies, Class Counsel selected ILYM Group, Inc. (ILYM) to serve as the Claims Administrator. *See* Settlement at § 9. ILYM has served as claims administrator in other class actions before this Court. *See, e.g., Greene v. Gino Morena Enterprises, LLC*, No. 13CV1332 JM NLS, 2014 WL 5606442, at *1 (S.D. Cal. Nov. 4, 2014). ILYM also provided the best price on claims administration – agreeing to administer the case for a flat fee of $5,500. This is certainly reasonable given the size and needs of this case. *Id.* (awarding $15,560 in claims administration fees for a $575,000 wage and hour settlement).

### 4) Attorney's Fees and Costs.

Many (most?) class action settlements calculate attorney's fees on the basis of the total settlement fund, this Settlement provides that attorney's fees are to be calculated *after* all costs incurred have been paid. As discussed below, these costs are not limited to the approximately $20,000 in case costs/expenses incurred by Class Counsel, but also include $10,000 for claims administration, and the proposed $15,000 Class Service Payment to Haukland. Only after all these costs are deducted will Class Counsel apply for attorney's fees of 33.3% of the remaining fund. This amount is consistent with other awards in similar cases. *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) (approving a fee equal to 33.3% of the gross – rather than net – settlement fund of $1,290,000); *Rippee v. Boston Mkt. Corp.*, Case No. 05cv1359 BTM (JMA) at Dkt. 70, at 7-8 (S.D.Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million wage and hour class action). Class Counsel will file their request for attorney's fees and costs at least 14 days prior to the date any objections will be due.

### C. The Release.

As might be expected in a wage and hour settlement, members of the California Class and consenting members of the FLSA Collective will release all wage and hour claims. *See* Settlement at §§ 18 & 19. However, the released claims do not "include any claims for personal injuries, claims for retirement benefits, or claims unrelated to purported violations of federal or state wage and hour laws." *Id.* Further, the release is limited to the period for which the parties shared employment data (i.e., up to June 30, 2014). *Id.*

### D. The Notice.

To protect the rights of absent class members, the court must provide the best notice practicable to class members of a potential class action settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); Fed. R. Civ. P. 23(e)(1) (in a class settlement, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal"). The "class notice … must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

*Beck-Ellman v. Kaz USA, Inc.*, No. 3:10-CV-02134-H-DHB, 2013 WL 1748729, at *7 (S.D. Cal. Jan. 7, 2013) (quoting Fed. R. Civ. P. 23(c)(2)(B)). The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner. It does not guarantee any particular procedure but rather requires only notice reasonably calculated to apprise interested parties of the pendency of the action affecting their interests and an opportunity to present their objections. *Shutts*, 472 U.S. at 811-12.

If preliminary approval of the Settlement is granted, the Claims Administrator will mail the Notice of Pendency of Class Action and Proposed Settlement to the California Class and Claim Form (Exhibit B) or the Official Court Notice of Settlement of Collective Action Lawsuit (Exhibit C) (Exhibits B and C, along with their application Claim Forms, are referred to herein, interchangeably, as the "Class Notice") to the members of the Settlement Classes at their addresses last known to Randstad (after standard verification and address correction functions are performed). *See* Settlement (Exhibit A) at § 10(b). If any Class Notices are returned as undeliverable and received by the Claims Administrator, the Claims Administrator shall re-mail same to any better address which may be reasonably available to the Claims Administrator. *Id.* at § 11(c). The Claims Administrator will perform one skip-trace on any addresses returned as undeliverable. *Id.*

In plain English, the Class Notice: (1) describes the nature of this overtime class and collective action; (2) defines the class certified; (3) outlines the wage claims covered by the settlement and Randstad's defenses; (4) informs each California Class member that he/she may enter an appearance through an attorney if the member so desires; (5) states that the Court will exclude any California Class member who requests exclusion; and (6) explains  the

1   binding effect of a class judgment on members of the California Class who do not opt-out,

2   and members of the FLSA Collective who opt-in. *See* Exhibits B and C. So that members of

3   the Settlement Classes understand there is not simply a coupon at stake, "each

4   worker's notice and claim form" will include "a monetary amount that is calculated as that

5   worker's estimated share of the settlement, although the notice and claim form should also

6   contain language that the estimated amount is subject to change." *See* Dkt. 37, p. 2; Exhibits

7   B and C.

8        The Class Notice informs the California Class a final approval hearing has been

9   scheduled, and informs California Class Members that if they wish to object to the

10  settlement, they must file with the Court and serve on counsel for the parties either a written

11  statement objecting to the Settlement or a written notice of intention to appear and object at

12  the final approval hearing. Thus, the proposed notice program exceeds the standards required

13  by due process.

14  **4.  The Settlement Should Be Preliminarily Approved.**

15       The Settlement is fair, adequate, and reasonable, justifying this Court's preliminary

16  approval. For purposes of giving effect to and implementing the Settlement, Haukland

17  asserts (and, for settlement purposes only, Randstad does not oppose) that the California

18  Class and the FLSA Collective are appropriately certified.

19       **A.  Class/Collective Action Settlements Are Encouraged.**

20       Federal law strongly encourages settlements in the context of class actions. *See, e.g.,*

21  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[O]verriding public interest in

22  settling and quieting litigation" is "particularly true in class action suits.") (quotations

23  omitted). As this Court has noted, the "Ninth Circuit favors deference to the private

24  consensual decision of the settling parties, particularly where the parties are represented by

25  experienced counsel and negotiation has been facilitated by a neutral party-in this instance, a

26  private mediator and a magistrate judge." *Beck-Ellman v. Kaz USA, Inc.*, No. 3:10-CV-02134-

27  H-DHB, 2013 WL 1748729, at *5 (S.D. Cal. Jan. 7, 2013) (internal quotes omitted). "In

28  reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range

10

for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.* (quoting *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 965 (9th Cir.2009)). As discussed below, both sides are well represented, fully informed, and believe their best interests are served by entering into the Settlement, rather than proceeding to trial.

## B. The Preliminary Approval Process.

A class action may not be dismissed, compromised, or settled without the approval of the Court.[1] Fed. R. Civ. P. 23(e). "Court approval involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Beck-Ellman v. Kaz USA, Inc.*, No. 3:10-CV-02134-H-DHB, 2013 WL 1748729, at *5 (S.D. Cal. Jan. 7, 2013). At the "preliminary approval stage [- where we are now -] the Court need only review the parties' proposed settlement to determine whether it is within the permissible 'range of possible judicial approval' and, thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate." *Beck-Ellman*, No. 3:10-CV-02134-H-DHB, 2013 WL 1748729, at *5.

Preliminary approval of a class settlement is appropriate if: "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval[.]" *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). The inquiry should be to the settlement as a whole, rather than the component parts. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The proposed settlement must "stand or fall in its entirety" and the Court may not "delete, modify or substitute certain provisions." *Id.* at 1026. The

---

[1] In addition, because the FLSA's provisions are mandatory, employees' claims for back wages may not be compromised absent either supervision by the Secretary of Labor or approval by the Court. *See* 29 U.S.C. § 216(c); *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

1   Court's role must be limited to the extent necessary to reach a reasoned judgment that the

2   agreement is not the product of fraud or overreaching by, or collusion between, the

3   negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate

4   to all concerned. *Officers for Justice*, 688 F.2d at 626. But given some factors bearing on the

5   fairness of a class settlement "cannot be fully assessed until the Court conducts the final

6   approval hearing, a full fairness analysis is unnecessary at this stage." *Beck-Ellman*, No. 3:10-

7   CV-02134-H-DHB, 2013 WL 1748729, at *5. Instead, the practical purpose of preliminary

8   approval is to facilitate distribution to the Settlement Classes of the terms of the proposed

9   Settlement, inform the class members of their rights to participate, object, or exclude

10   themselves, and to set a date and time of final approval. *Id.*

11   **C. The Settlement Meets the Requirements for Preliminary Approval.**

12   **1) Serious, Informed, Non-Collusive Negotiations Lead to the Settlement.**

13   The Settlement in this case was only reached after both an ENE before Judge Bartick

14   and a full day private mediation failed. Indeed, the parties ultimately accepted a proposal

15   from the experienced mediator – Michael Dickstein – who was assisting negotiations. *Beck-*

16   *Ellman*, No. 3:10-CV-02134-H-DHB, 2013 WL 1748729, at *5 (deference is appropriately

17   given to settlements reached with the assistance of a magistrate and/or an experienced

18   mediator). And these negotiations were preceded by formal discovery (including depositions

19   and over 100 document requests), as well as an exchange of written liability and damage

20   analysis. In reaching settlement, counsel on both sides relied on the respective substantial

21   litigation experiences in similar employment class actions, and through analysis of the legal

22   and factual issues presented in this case. Information gleaned from investigation and

23   discovery in forming Class Counsel's assessment of the strengths and weaknesses of the case

24   and the benefits of the settlement. Thus, by the time negotiations took place, both parties

25   have been through significant fact finding and legal analysis.

26

27

28

### 2)  The Settlement Has No Obvious Deficiencies.

The Settlement contains no "obvious deficiencies." As set forth above, available payments to the members of the Settlement Classes are substantial on an individual and collective basis. *See* Section 3.B.1, *supra*. The Settlement offers California Class members approximately 40% of the potential value of their claims, including full recovery for their alleged unpaid overtime. Similarly, FLSA Collective members are eligible to recover approximately 50% of the potential value of their claims, including full recovery of their alleged unpaid overtime. These numbers are net of all attorney's fees and costs. And since both Randstad and the members of the Settlement Classes had an incentive to be sure that Randstad's records of the hours worked were accurate, relying on these records to calculate shares is not only reasonable, it makes perfect sense.

The Claims Administrator was chosen after a bidding process, and its fee ($5,500) is certainly reasonable given the size of the Settlement. Further, the attorney's fees – which will be calculated *after* all case costs are deducted from the fund – are within the range of fees approved in similar cases. *Barbosa*, 297 F.R.D. at 451 (collecting cases). Similarly, Class Counsel's case costs are consistent with litigated cases in which more than one deposition was taken. *Cf. Williams v. Centerplate, Inc.*, No. 11-CV-2159 H-KSC, 2013 WL 4525428, at *9 (S.D. Cal. Aug. 26, 2013) (approving $20,000 in case costs from a settlement of just $650,000). The Settlement, therefore, does not raise any "obvious" concerns such as "excessive compensation" of Class Counsel or the Claims Administrator. *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008)

Nor does the Settlement contain a class-wide release that is not tethered to the facts and circumstances giving rise to the complaint. *In re OCA, Inc. Sec. & Derivative Litig.*, CIV A 05-2165, 2008 WL 4681369, at *13 (E.D. La. Oct. 17, 2008) (evaluating the breadth of the release); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 89 (E.D.N.Y. 2007) ("[t]he general release proposed by the parties in this case raises … concerns about fairness and adequacy of representation"). Rather, the Settlement here limits the release to wage and hour claims that arose during the period covered by this case.

**3) The Settlement Does Not Improperly Grant Preferential Treatment to Haukland or Segments of the Class.**

As noted above, Haukland significantly delayed resolution of his own claim in order to obtain a recovery for the members of the Settlement Classes. *See, e.g.,* Dkts. 16 & 19. His Class Service Payment is intended to recognize his substantial risk, initiative, and efforts on behalf of the Settlement Classes, and his execution of a general release (as opposed to the limited releases executed by the remainder of the class members). The proposed Class Service Payment, representing approximately "1.0% of the overall settlement amount, … is reasonable." *Beck-Ellman*, No. 3:10-CV-02134-H-DHB, 2013 WL 10102326, at *10; *In re M.L. Stern Overtime Litig.*, No. 07CV118 BTM (JMA), 2009 WL 3272872, at *4 (awarding class representatives $15,000 each).

And while workers in the California Class are receiving more money under the Settlement, there are good reasons for this adjustment. California provides for daily, not just weekly overtime, as well as for meal and rest break claims. It has not adopted the FLSA's "highly compensated" exemption and has other advantages (such as the manner in which exemptions are determined) that are simply not present under the FLSA. So the members of the California Class are, correctly, receiving more. *See Rosenburg v. Int'l Bus. Machines Corp.*, CV06-00430 PJH, 2007 WL 2043855, at *3 (N.D. Cal. July 12, 2007)(approving allocation plan awarding multiplier of 3 to California workers); *see also, Hopson v. Hanesbrands Inc.*, CV-08-0844 EDL, 2009 WL 928133, at *2 (N.D. Cal. Apr. 3, 2009)(approving settlement under which California class members would have their work weeks increased by a factor of 1.5 to compensate for the additional remedies available under California law as compared with the remedies available under FLSA).

**4) The Settlement Falls within the Range of Possible Approval.**

A settlement is almost by definition a compromise. *Linney*, 151 F.3d at 1242. While Haukland believes strongly in the strength of the claims at issue here, he recognizes that all litigants face risks – not the least of which is delay. Class Counsel has been involved in several wages cases that took years to resolve, even after *successful* determinations – such as a jury

14

verdict in favor of the plaintiffs - on the merits. *See, e.g., Roussell v. Brinker Int'l, Inc.,* 441 F. App'x 222 (5th Cir. 2011) (more than 6 years of litigation, including more than 2 ½ years of litigation after a jury verdict in plaintiffs' favor); *Belt v. EmCare, Inc.,* 444 F.3d 403 (5th Cir. 2006) (nearly 2 years of litigation after summary judgment rendered in favor of plaintiffs). And, of course, representing relatively highly paid, well-educated workers in overtime has not always ended well for the workers. *See, e.g., In re Farmers Insurance Exchange,* 481 F.3d 1119, 1132 (9th Cir. 2007).

Further, and recognizing the Ninth Circuit has historically been considered hospitable to wage and hour class actions, recent trends in class certification have not been uniformly favorable for plaintiffs. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 571 F.3d 953 (9th Cir. 2009) (reversing certification of wage and hour class action); *Duran v. U.S. Bank Nat. Assn.,* 59 Cal. 4th 1, 325 P.3d 916 (2014) (reversing certification of wage and hour class action following jury trial in favor of the plaintiffs); *see also,* Schneider & Stine, Wage And Hour Law: Compliance & Practice, § 20:19.50 (courts "frequently" decertify collective actions). This Settlement removes all of these risks.

After all costs and fees are deducted, this Settlement will pay: (a) each claiming California Class member approximately 40% of the potential value of his or her claim, including full recovery of his or her alleged unpaid overtime; and (b) each consenting FLSA Collective member approximately 50% of the potential value of his or her claim, including full recovery of his or her alleged unpaid overtime. For California Class members, this means an average of more than $500 for each week worked. For FLSA Collective members, the average is more than $250 per workweek. There can be little doubt this Settlement is within the "range of possible approval," meriting preliminary approval and presentation to the class. *Ma,* Case No. SACV 12–02161–DOC (RNBx), 2014 WL 360196, at *5; *Monterrubio,* 291 F.R.D. at 444.

**5.  The California Class Meets the Requirements of Rule 23.**

   **A.  The Proposed Settlement Class Is Sufficiently Numerous**

The numerosity requirement is met if the class is so large that joinder of all members would be impractical. Fed. R. Civ. P. 23(a)(1). A proposed class of at least 40 members presumptively satisfies the numerosity requirement. *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473 (C.D. Cal. 2012) ("A proposed class of at least forty members presumptively satisfies the numerosity requirement."). However, in determining whether a plaintiff has satisfied the numerosity requirement, a court may also consider other factors, such as geographical dispersion, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624-25 (5th Cir. 1999). So even smaller numbers may justify class treatment where, for example, "putative class members [are] still employed by the [defendant and] might be reluctant to file individually for fear of workplace retaliation." *Id.* at 624.

In this case, the California Class encompasses 52 class members. Further, given the temporary nature of their work, the workers change locations regularly. Indeed, Haukland has changed jobs twice since working at Randstad and now lives in Arizona. Given the facts of this case, the numerosity requirement is met, as joinder of all of these workers as parties would be impracticable. *Mullen*, 186 F.3d at 624-25.

   **B. The Commonality Requirement Is Met**

Rule 23(a)(2) requires questions of law and fact to be common to the class. "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556, 180 L. Ed. 2d 374 (2011). Common questions exist where the "failure to pay overtime … resulted from a uniform, official, corporate policy of treating [the category of worker at issue] as exempt." *Kurgan v. Chiro One Wellness Centers LLC*, 10-CV-1899, 2014 WL 642092, at *6 (N.D. Ill. Feb. 19, 2014); *In Re: Scientific Drilling International, Inc., Fair Labor Standards Act (FLSA) Litigation,* 24 F.Supp.3d 1364, 1365 (JPML June 4, 2014) (finding two actions "unquestionably share factual questions arising out of allegations that defendant has failed to pay certain employees overtime compensation in violation of the

1  [FLSA] and [state] wage and hour laws"). For example, the administrative exemption defense

2  raises a common question of whether the workers' duties constitute "work directly related to

3  management policies or general business operations" of the defendant or its customers.

4  *Heffelfinger v. Elec. Data Sys. Corp.*, 492 F. App'x 710, 714 (9th Cir. 2012) (finding this issue to

5  be a "common question" supporting class certification).

6       Because the primary questions of law and fact central to Haukland's claims include

7  whether Randstad's pay policy violated the "salary basis" requirements of the FLSA and/or

8  California law, whether the Class Members are entitled to unpaid wages under the federal and

9  state wage law necessarily raises common question of law and fact common to all the class

10 members. *Heffelfinger*, 492 F. App'x at 714; *Kurgan*, 2014 WL 642092, at *6; *see also, Morris*, 859

11 F. Supp. 2d at 615–16 (S.D.N.Y.2012) (commonality satisfied where, among other

12 allegations, plaintiffs claimed that defendant had a policy of not paying all class members

13 overtime pay). Thus, for settlement purposes, the California Class shares sufficient

14 commonality to satisfy Rule 23(a)(2).

15 **C. The Typicality Requirement Is Met**

16      To satisfy the typicality requirement of Rule 23(a), the proposed class representative

17 must show his claims "are typical of the claims or defenses of the class." Fed. R. Civ. P.

18 23(a)(3). The typicality requirement is "permissive and requires only that the representative's

19 claims are reasonably co-extensive with those of the absent class members; they need not be

20 substantially identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998).

21 "Typicality is satisfied 'when each class member's claim arises from the same course of

22 events, and each class member makes similar legal arguments to prove the defendants'

23 liability.'" *Thurston v. Bear Naked, Inc.*, No. 11-CV-2985-H BGS, 2013 WL 5664985, at *4 (S.D.

24 Cal. July 30, 2013) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)). "In

25 determining whether typicality is met, the focus should be on the defendants' conduct and

26 the plaintiffs' legal theory, not the injury caused to the plaintiff." *Astiana v. Kashi Co.*, 291

27 F.R.D. 493, 502 (S.D. Cal. 2013) (internal quotes omitted).

28

The California Class meets the typicality requirement here (at least for settlement purposes) because all the class members are alleged to have been denied overtime because of Randstad's allegedly illegal policy of classifying them as exempt. *Rodriguez*, 591 F.3d at 1124; *Astiana*, 291 F.R.D. at 502. Therefore, Haukland's legal claims are typical of those of the California Class as a whole because they apply the same legal theory to the same policies and practices.

### D. The Adequacy Requirement Is Met

"Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001). This Court applies "a two-prong test for this requirement: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Ferrero Litig.*, 278 F.R.D. 552, 559 (S.D. Cal. 2011) (internal quotes omitted).

Here, Haukland "possess[es] the same interest and suffer[ed] the same injury as the class members." *Amchem*, 521 U.S. at 625–26, 117 S.Ct. 2231 (internal quotation marks omitted). As with the other members of the California Class, he seeks compensation for allegedly unpaid wages withheld as a result of an allegedly illegal policy of classifying these workers as exempt. Thus, Haukland had the same interests, and asserted the same type of injury, as the members he seeks to represent. *Id.*; *Astiana*, 291 F.R.D. at 503 (finding named plaintiff adequate where her interests were "coextensive with the proposed class").

Haukland proved himself to be adequate representatives of the class by rejecting a substantial individual settlement in favor of pursuing a class action. *See* Dkt. 16 & 19. And even when he did settle, Haukland did **not**, for example, agree to an overly broad release of claims. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 89 (E.D.N.Y. 2007) ("[t]he general release proposed by the parties in this case raises … concerns about fairness and adequacy of representation"). Rather, the release is limited to wage-and-hour claims. *See* Settlement (Exhibit A) at Haukland also devoted time and effort in prosecuting the class claims including: (1) assisting counsel with investigating the case; (2) attending an Early Neutral

1  Evaluation with Judge Bartick in the Southern District of California; (3) giving a deposition;

2  and (4) responding to discovery.

3       Class Counsel has significant experience in handling large scale wage and hour

4  litigation. *Roussell v. Brinker Intern., Inc.*, Case No. 09-20561, 2011 WL 4067171 (5th Cir. Sept.

5  14, 2011) (affirming jury verdict in favor of class of waiters in FLSA tip credit case); *Belt v.*

6  *EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (deciding, as a matter of first impression, that

7  hourly paid Physician Assistants and Nurse Practitioners were entitled to overtime under the

8  FLSA and affirming judgment in favor of nationwide class). Indeed, a number of courts have

9  noted Bruckner Burch's lawyers are "highly experienced attorneys [that] have acted as class

10 counsel in similar actions in federal and state courts." *Schmidt v. Smith & Wollensky, LLC*, 268

11 F.R.D. 323, 328 (N.D. Ill. 2010); *Girault v. Supersol 661 Amsterdam, LLC*, 1:11 CIV 6835 PAE,

12 2012 WL 2458172, at *2 (S.D.N.Y. June 28, 2012)(Bruckner Burch lawyers "are experienced

13 and well-qualified employment lawyers and class action lawyers and have particular expertise

14 in prosecuting and settling wage and hour class actions"); *Diaz v. Scores Holding Co.*, 07 CIV.

15 8718 THK, 2011 WL 6399468, at *5 (S.D.N.Y. July 11, 2011)(Bruckner Burch employs

16 "experienced employment lawyers with good reputations among the employment law bar").

17 Further, Haukland respectfully submits the size of the settlement, on an aggregate and

18 individual basis, demonstrates Class Counsel have done well for the Settlement Classes.

19      **E. The California Class Satisfies Rule 23(b)(3)'s Requirements.**

20      "[Rule 23(b)(3)] encompasses those cases in which a class action would achieve

21 economies of time, effort and expense and promote uniformity of decision as to persons

22 similarly situated, without sacrificing procedural fairness or bringing about other undesirable

23 results." Notes of Advisory Committee on Rules, 1966 Amendment. Class actions may be

24 certified where common questions of law and fact predominate over questions affecting

25 individual members and where a class action is superior to other means of adjudicating the

26 controversy. The predominance inquiry tests whether the proposed classes are sufficiently

27 cohesive to warrant adjudication. *Amchem Products, Inc.*, 521 U.S. at 623. The court must rest

28 its examination on the legal or factual questions of the individual class members. *Hanlon*, 150

1 | F.3d at 1022.

2 |       Here, the alleged companywide policies affected *all* claims of *all* the members of the

3 | Settlement Classes. In particular, Haukland alleges Randstad paid all the class members

4 | according to the same payment plan, and denied all of them overtime based on a

5 | determination these workers were exempt from the FLSA and California state law. Thus,

6 | while there may be some variation between individual class member's claims, i.e., such as the

7 | actual amount of damages, common questions of law and fact predominate (at least for

8 | settlement purposes). *Kiefer v. Moran Foods, LLC*, 12-CV-756 WGY, 2014 WL 3882504 (D.

9 | Conn. Aug. 5, 2014) (finding similar allegations presented common questions that

10 | predominated).

11 |       The court must also consider if a class action is superior to individual suits. *Amchem*

12 | *Products, Inc.*, 521 U.S. at 615. The superiority requirement involves a "comparative evaluation

13 | of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. Here, as in

14 | *Hanlon*, the alternative methods of resolution are individual claims for relatively small amount

15 | of damages. The members of the Settlement Classes, by and large, worked short term

16 | assignments of approximately 4 months. These claims would "prove uneconomic for

17 | potential plaintiffs" because "litigation costs would dwarf potential recovery." *Id.* at 1023.

18 | The class action device could also conserve judicial resources by avoiding the waste and delay

19 | of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims.

20 | Litigation costs would surely surpass the average recovery for each class member. For these

21 | reasons, as in *Hanlon*, a class action is the preferred method of resolution.

22 |       Class certification (for settlement purposes) in this case will provide substantial

23 | benefits to the litigants and the Court. The alternative to class certification here is filing

24 | dozens of individual cases. Individual cases would waste judicial resources and could lead to

25 | inconsistent adjudications of similar issues and claims. Many workers with relatively small

26 | claims would likely decide not to bother pursuing their claims at all. Other employees are

27 | current employees who may not be willing to risk the potential for retaliation (however

28 | unfounded their concerns might be) in order to recover unpaid wages. Aside from class

treatment, a group-wide adjudication of Randstad's allegedly unlawful conduct is not available. Rather than having a multiplicity of proceedings, all involving substantially the same issues and evidence, a class action allows these matters to be resolved once on behalf of all claimants.

**6.   The FLSA Collective Should Be Certified.**

"Because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n. 8 (11th Cir.1982)). Where the settlement occurs in the context of a lawsuit, courts typically regard this "adversarial nature … to be an adequate indicator of the fairness of the settlement." *Id.; Lynn's Food Stores*, 679 F.2d at 1353–54. "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *Id.* "Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23." *Id.*

As set forth above, the Settlement readily meets the standards for approval under Rule 23. It therefore follows that it meets the requirements for at least preliminary approval under the FLSA.

**7.   Conclusion.**

The arms-length settlement in this matter avoids significant litigation risks and makes the $1.25 million settlement available to the 123 members of the Settlement Classes. The proposed Class Service Award, as well as the proposed administrator costs, attorney's fees, and case cost award are reasonable. The Settlement Classes should be certified for settlement purposes only, preliminarily approved, and the proposed notice plan should be approved. Finally, the Court should set a hearing on final approval as the Court's calendar permits.

Dated: February 26, 2015

**BRUCKNER BURCH PLLC**

**/s/ Rex Burch**

_____

Richard J. (Rex) Burch
*Attorney for Haukland and the Proposed Classes*

## CERTIFICATE OF SERVICE

I served this document on all counsel of record via the Court's ECF system, which provides an email to all parties of record in this matter.

**/s/ Rex Burch**

_____

Richard J. (Rex) Burch