1
2
3
4
5
6
7
8

9          **UNITED STATES DISTRICT COURT**

10          **SOUTHERN DISTRICT OF CALIFORNIA**

11

12  HEATH HAUKLAND, individually
    and on behalf of others similarly
13  situated,

14                              Plaintiffs,

15      vs.

16

17

18  THINK RESOURCES n/k/a
    RANDSTAD ENGINEERING,
19

20                              Defendant.

21

CASE NO. 14-CV-0145-H (DHB)

**FINAL JUDGMENT AND ORDER:**

**(1) CERTIFYING SETTLEMENT CLASSES;**

**(2) GRANTING FINAL APPROVAL OF SETTLEMENTS;**

**(3) APPROVING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE AWARD**

[Doc. Nos. 48, 49]

22      On June 15, 2015, Heath Haukland ("Plaintiff") Plaintiff filed a motion for

23  attorneys' fees, expenses and costs, and an incentive award for the class representative.

24  (Doc. No. 48.) On July 17, 2015, Plaintiff filed a motion for certification of one class

25  action and one collective action, and for final approval of the corresponding settlement

26  agreements.  (Doc. No. 49.)  No class members filed an objection to the settlement

27  agreements.  The Court held a hearing on July 27, 2015.  No objectors appeared at the

28  hearing.  Richard J. Burch appeared for the Plaintiff.  Sheryl L. Skibbe appeared for

Defendant Think Resources n/k/a Randstad Engineering ("Defendant").   After due consideration, the Court certifies the settlement classes, grants final approval of the settlements, approves Plaintiff's request for attorneys' fees, costs, and expenses, approves the incentive awards for the class representative, and enters final judgment.

## Background

### I.    Factual and Procedural Background

This is a wage and hour class action brought on behalf of alleged non-exempt employees, or former employees, of Defendant. (Doc. No. 27 ("FAC") ¶ 1.) Defendant is a staffing company that provides skilled personnel to a variety of industries. (Id. at ¶ 6; Doc. No. 30 ("Answer") at ¶ 6.)  Plaintiff asserts claims for failure to pay overtime under both California law and the Fair Labor Standards Act ("FLSA"), failure to provide meal and rest breaks, failure to timely pay final wages, and violations of the California Unfair Competition Law, as well as costs and attorneys' fees. (See FAC.)

The parties engaged in substantial discovery including multiple depositions. (Doc. No. 48-2, Declaration of Richard J. Burch ("Burch Decl.") ¶ 9(g-h, l-m).)  The parties also engaged in motion practice, including briefing a motion to dismiss and a motion for summary judgment.  (See Doc. Nos. 16, 17.)  The parties participated in an early neutral evaluation before a magistrate judge in this district.  (Doc. No. 7.)  The parties later participated in a mediation before an experienced wage and hour mediator. (Doc. No. 49-1 at 2.) Subsequent to the private mediation, the parties reached a settlement.  (Id.)  On March 30, 2015, the Court granted preliminary approval of the settlement agreements, provisionally certified the settlement class and settlement collective, and approved the form and manner of notice.  (Doc. No. 44.)

On June 15, 2015, Plaintiff filed a motion for attorneys' fees, expenses and costs, and an incentive award for the class representative.  (Doc. No. 48.)  On July 17, 2015, Plaintiff filed a motion for certification of one class action and one collective action and for final approval of the corresponding settlement agreements.  (Doc. No. 49.)  No one has filed an objection to the settlement agreements.

## II.     The Settlement Agreements

The settlement agreements benefit two groups, the California Settlement Class and the FLSA Collective.  The "California Class" includes:

> All hourly workers employed by Defendant who were paid at "straight time" rates for hours worked in California in excess of 8 in a day and/or 40 in a week during the California Claims Period from January 21, 2010 to June 30, 2014 and who do not opt out of the certified class as set forth in Paragraph 11 of this Agreement.

(Doc. No. 42-2 at 3.)  The "FLSA Collective" includes:

> All hourly workers employed by Defendant in the states of Connecticut, Illinois, Iowa, Maryland, Pennsylvania, New York, South Carolina and Utah who were paid at "straight time" rates for hours worked in excess of 40 in a week from February 19, 2012 to June 30, 2014 (the "FLSA Claims Period") and who opt into the FLSA Collective during the opt-in period set forth in Paragraph 11 of this Agreement.

(Id.)

Under the settlement agreement, Defendant will pay up to $1,250,000 to fund the settlement of the action.  (Id. at 4.)  The class representative will receive a $15,000 total incentive award.  (Id.)  Class counsel will receive a maximum of 33 and 1/3% of the settlement funds after the deductions for costs and the class representative incentive award.  (Id.)  Class counsel may claim up to $25,000 in costs.  (Id.) The net settlement amount is what remains after deducting the class service payment to the named plaintiff, class counsel's attorneys' fees and expenses, the claim administrator's fees and expenses, and other costs associated with the settlement.  (Id. at 5.)  The net settlement amount will then be divided between the California Class (60%) and the FLSA Collective (40%).  (Id. at 5-7.)  At least 70% of the amount allotted to the California Class must be paid to California Class members who participate in the settlement.  (Id. at 7.)  Any remaining portion of the allocation to the California class members, if unclaimed, would be returned to Defendant.  (Id.)  FLSA class members will receive only what they validly claim and the rest of the FLSA allocation would be returned to Defendant.  (Id. at 8.)  In return for claim payment, members of both classes release the wage and hour claims related to the claims Plaintiff is pursuing in this lawsuit.  (Id. at

23-24, 29.)

**III.    Class Members' Notice of Settlement**

Defendant provided the California Class and FLSA Collective member lists to the settlement administrator. (Doc. No. 49-2, Declaration of Elizabeth DiTirro ("DiTirro Decl.") ¶ 3.)  The California Class member list contained fifty-six (56) persons and the FLSA Collective member mist contained seventy (70) persons.  (Id.)  After updating several addresses, on May 8, 2015, the settlement administrator mailed the settlement notices and notice of settlement hearing to members of both the class and collective actions.  (Id. at ¶¶ 5-6.)

As of July 16, 2015, twenty-five (25) members of the California class submitted claims and twenty-nine (29) members of the FLSA collective submitted claims.  (Id. at ¶ 10.) The deadline for members of both the California Class and the FLSA Collective to request to submit a claim or request exclusion was July 7, 2015.  (Id. at  ¶¶ 13, 15.)  As of July 16, 2015, the settlement administrator had not received any late claims and had not received any requests for exclusion.  (Id. at ¶¶ 12, 14.)  Additionally, neither the settlement administrator nor class counsel received any objections to the settlement. (Id. at ¶ 11; Doc. No. 49-3, Decl.) at ¶¶ 5, 15.)  As of July 17, 2015, members of the California Class and FLSA Collective claimed 65.76% of the net settlement fund. (Doc. No. 49-3, Burch Decl., at ¶ 3.)

**Discussion**

When the parties reach a settlement agreement prior to class certification, the Court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  Thus, the court must first assess whether a class exists, and second, determine whether the proposed settlement is "fundamentally fair, adequate, and reasonable." Id.

/ / /

/ / /

**I.      Certification**

A plaintiff seeking to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure must first satisfy the requirements of Rule 23(a).  Fed. R. Civ. P. 23(b). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3).  Here, Plaintiff seeks to certify the California Class.

A.      Rule 23(a) Requirements

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following requirements are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a).

The numerosity requirement is met if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiff estimated that the California settlement class totals fifty-two class members.  (Doc. No 42-1 at 16.) Plaintiff ultimately provided fifty-six names to the settlement administrator for this class.  (DiTirro Decl. at ¶ 3.)  Accordingly, the proposed class meets the numerosity prerequisite in this case.  See, e.g., Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988) (forty class members numerous enough to fulfill Rule 23(a)(1)).

Commonality requires a showing that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Courts construe Rule 23(a)(2) permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'"  Abdullah v. U.S. Sec. Assoc., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)).  Here, there are questions of law and fact common to class members, such as whether Defendant's pay policies are unlawful.  (See Doc. No. 42 at 19.)  Accordingly, the class meets the commonality prerequisite.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  A plaintiff's

claims are "'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156 (1982). Here, Plaintiff and the California class members share the same injury: they allegedly failed to receive proper compensation for hours worked in excess of eight hours in a day or forty hours in a week. (Doc. No. 42-1 at 18.) As Plaintiff's claims are reasonably co-extensive with the claims of absent class members, the class meets the typicality prerequisite.

Adequacy of representation under Rule 23(a)(4) requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the named plaintiff and class counsel do not have any conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d at 1020. Here, there does not appear to be any conflict of interest between Plaintiff and the absent class members. Plaintiff and his counsel have vigorously participated in the litigation process thus far, and class counsel has extensive experience in wage and hour class action litigation. (See Doc. No. 42-1 at 19.) As a result, Plaintiff and his counsel are adequate representatives of the proposed class. For the foregoing reasons, Plaintiff has met all of the requirements of Rule 23(a).

B.    Rule 23(b)(3) Requirements

Rule 23(b)(3) requires that the court find that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s predominance and superiority requirements are designed "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural

fairness or bringing about other undesirable results.'" <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 615 (1997) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23, 28 U.S.C. App., pp. 696-97).

"The main concern in the predominance inquiry [is] the balance between individual and common issues." <u>In re Wells Fargo Home Mortg. Overtime Pay Litig.</u>, 571 F.3d 953 (9th Cir. 2009). This analysis requires more than proof of common issues of law and fact. <u>Hanlon</u>, 150 F.3d at 1022. Rather, the common questions should "present a significant aspect of the case and . . . be resolved for members of the class in a single adjudication." <u>Id.</u> (internal quotation omitted). Here, Plaintiff and the members of both the class and collective action are subject to the same allegedly unlawful company-wide wage and hour policies. (Doc. No. 42-1 at 19-20.) Moreover, their legal remedies are the same. (<u>Id.</u>) Consequently, Plaintiff has met his burden of showing that the issues common to the classes predominate over any individual issues. Fed. R. Civ. P. 23(b)(3).

"Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." <u>Wolin v. Jaguar Land Rover N. Am., LLC</u>, 617 F.3d 1168, 1175-76 (9th Cir. 2010). Notably, the class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Here, there is no evidence that absent class members from either class wish to pursue their claims individually. Moreover, any class member from either class who wants to pursue an individual claim had the opportunity to elect not to participate in the settlement agreement. (Doc. No. 42-2 at 20, 27). No class or collective action members requested exclusion. (Doc. No. 49-3, Burch Decl. at ¶ 4.) Because Plaintiff has satisfied the requirements of Rule 23(b)(3), the Court grants certification of the California settlement class.

/ / /

1  C.      Certification of the FLSA Collective Action

2          The FLSA provides for a collective action where the complaining employees are

3  "similarly situated." 29 U.S.C. § 216(b).  But the FLSA does not define 'similarly

4  situated,' nor has the Ninth Circuit defined it."  Hill v. R+L Carriers, Inc., 690 F. Supp.

5  2d 1001, 1009 (N.D. Cal. 2010).  Here, the FAC alleges that the collective action

6  employees are similarly situated in that they are subject to the same allegedly unlawful

7  practice of not paying overtime rates for hours worked over forty hours in a week in

8  violation of the FLSA.  (FAC ¶¶ 24-27.)  The parties jointly request for the court to

9  certify the collective action for purposes of this settlement.  Accordingly, the Court

10  certifies the FLSA Collective for purposes of this settlement.

11  **II.     Settlement Agreements**

12          Rule 23(e) requires a court to determine whether a proposed settlement is

13  "fundamentally fair, adequate, and reasonable."  Staton, 327 F.3d at 959 (quoting

14  Hanlon, 150 F.3d at 1026).  To make this determination, a court must consider a number

15  of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense,

16  complexity, and likely duration of further litigation; (3) the risk of maintaining class

17  action status throughout the trial; (4) the amount offered in settlement; (5) the extent of

18  discovery completed, and the stage of the proceedings; (6) the experience and views of

19  counsel; (7) the presence of a governmental participant; and (8) the reaction of class

20  members to the proposed settlement.  Staton, 327 F.3d at 959.  In addition, the

21  settlement may not be the product of collusion among the negotiating parties.  In re

22  Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs

23  v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

24          In determining whether a proposed settlement should be approved, the Ninth

25  Circuit has a "strong judicial policy that favors settlement, particularly where complex

26  class action litigation is concerned."  In re Heritage Bond Litigation, 2005 WL

27  1594403, at *2 (C.D. Cal. June 10, 2005) (citing Class Plaintiffs v. Seattle, 955 F.2d

28  1268, 1276 (9th Cir. 1992)).  The Ninth Circuit favors deference to the "private

consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party, in this instance, a private mediator and a magistrate judge.  See Rodriguez v. West Publishing Corp., 563 F.3d 948, 965 (9th Cir. 2009).  "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value."  Id.

### A.    The Strength of Plaintiff's Case and Risk of Further Litigation

Both parties have expended significant time, effort, and resources supporting their positions, and would continue to do so if the settlement failed to receive final approval.  (See Doc. No. 49-1 at 5-7.)  The disputed factual and legal issues would be complex and costly to resolve at trial.  (Id.)  Both parties have considered the uncertainty and risk of the outcome of future litigation, the burdens of proof for liability and damages, as well as the general difficulties and delays of litigation.  (Id.)  These considerations led the parties to conclude that a timely settlement would be best for all involved parties.  See Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement.") (emphasis, internal quotation marks, and citation omitted).  The Court agrees that the recovery through settlement confers a substantial benefit to the class that outweighs the potential recovery that could have been obtained through full litigation.

### B.    The Amount Offered in Settlement

The settlement provides class members with immediate monetary relief by establishing a maximum settlement amount of $1,250,000.  (Doc. No. 49-1 at 3.)  The net settlement amount is what remains after deducting the class service payment to the named plaintiff, class counsel's attorneys' fees and expenses, the claim administrator's fees and expenses, and other costs associated with the settlement.  (Doc. No. 42-2 at 5.)  The net settlement amount will then be divided between the California Class (60%) and

the FLSA Collective (40%). (Id. at 5-7.)  At least 70% of the amount allotted to the California class must be paid to California class members who participate in the settlement. (Id. at 7.)  Any remaining portion of the allocation to the California class members, if unclaimed, would be returned to Defendant. (Id.)  FLSA class members will receive only what they validly claim and the rest of the FLSA allocation would be returned to Defendant. (Id. at 8.)  This settlement is a good result for the class and eliminates the risks, expenses, and delay associated with continued litigation. California Class members will receive more than $500 for each week worked and the FLSA Collective members will receive more than $250 for each week worked. (Doc. No. 49-1 at 7.)  Moreover, the settlement amount is the result of arm's-length negotiation conducted by experienced counsel.  Accordingly, the Court concludes that the amount offered in settlement weighs in favor of granting final approval of the settlement.

### C.    The Extent of Discovery Completed and Stage of the Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "'formal discovery is not a necessary ticket to the bargaining table.'" Linney, 151 F.3d at 1239 (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir.1982)).

The parties reached the settlement approximately one year after Plaintiff filed the original complaint and after extensive discovery and analysis of Plaintiff's claims. The parties exchanged discovery and conducted depositions. (Doc. No. 48-2, Burch Decl. ¶ 9(g-h, l-m).)    The parties participated in an early neutral evaluation before a magistrate judge and arranged mediation through a private mediator with experience in wage and hour actions.  Class counsel negotiated the settlement based on a full record and a thorough understanding of the strengths and weaknesses of the claims. (See Doc. No. 49.) Accordingly, the parties' investigation, discovery, and subsequent settlement discussions weigh in favor of granting final approval.

/ / /

1

**D.     The Experience and Views of Counsel**

2        Plaintiff's counsel has extensive experience acting as class counsel in

3   employment class action cases, including wage and hour litigation under California law.

4   (Doc. No. 48-2 at 2-3; Doc. No. 49-1 at 9-10.)  Class counsel recommend the settlement

5   as both fair and adequate, a factor that weighs in favor of granting final approval.

6        **E.     The Reaction of the Class Members to the Proposed Settlement**

7        As of July 16, 2015, twenty-five (25) members of the California Class submitted

8   claims and twenty-nine (29) members of the FLSA Collective submitted claims.  (Id.

9   at ¶ 10.)  The deadline for members of both the California Class and the FLSA

10  Collective to request to submit a claim or request exclusion was July 7, 2015.  (Id. at

11  ¶¶ 13, 15.)  As of July 16, 2015, the settlement administrator had not received any late

12  claims, and had not received any requests for exclusion.  (Id. at ¶¶ 12, 14.)

13  Additionally, neither the settlement administrator nor class counsel received any

14  objections to the settlement.  (Id. at ¶ 11; Doc. No. 49-3, Burch Decl. at ¶¶ 5, 15.)  As

15  of July 17, 2015, members of the California Class and FLSA Collective have claimed

16  65.76% of the net settlement fund.  (Doc. No. 49-3, Burch Decl., at ¶ 3.)  The lack of

17  objectors supports the fairness, reasonableness, and adequacy of the settlement.  See In

18  re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000)

19  ("If only a small number of objections are received, that fact can be viewed as indicative

20  of the adequacy of the settlement." (citations omitted)); Boyd v. Bechtel Corp., 485 F.

21  Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class had

22  filed no opposition).  Accordingly, the reaction of the class members weighs in favor

23  of granting final approval.

24       **F.     No Evidence of Collusion Between the Parties**

25       The collusion inquiry addresses the possibility the agreement is the result of

26  either overt misconduct by the negotiators or improper incentives of certain class

27  members at the expense of other members of the class.  Staton, 327 F.3d at 960.  In the

28  present case, because there is no evidence of overt misconduct, the Court's inquiry

focuses on the aspects of the settlement that lend themselves to self-interested action.

The $15,000 incentive award for Plaintiff does not appear to be the result of collusion.  The Court evaluates incentive awards using "'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . .[and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'"  Staton, 327 F.3d at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).  In the present case, Plaintiff has protected the interests of the class by engaging in investigation and discovery, being deposed, refusing a tender offer, and assisting counsel with other aspects of the case.  (Doc. No. 49-3, Burch Decl. at ¶¶ 20-27.)  Therefore, the $15,000 award appears to be reasonable in light of Plaintiff's efforts in this litigation.

Finally, the attorneys' fees do not appear to be the result of collusion.  Plaintiff's counsel may simultaneously negotiate the merits of the action and their attorneys' fees.  Staton, 327 F.3d at 971.  The attorneys' fees, litigation costs, and administration costs sought by Plaintiff's counsel are reasonable under the circumstances.

After considering all applicable factors, the Court concludes the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); Staton, 327 F.3d at 959.  Accordingly, the Court grants Plaintiff's motion for final approval of the settlement.

## III.    Attorneys' Fees and Expenses

With respect to the attorneys' fees, the Ninth Circuit has established a 25% "benchmark" for common fund cases.  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).  This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (1990).  Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable.  Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000).  The Ninth Circuit has identified a number

1    of factors that may be relevant in determining if the award is reasonable: (1) the results

2    achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the

3    contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards

4    made in similar cases.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th

5    Cir. 2002). Here, Plaintiff has requested an award of $400,000 in attorneys' fees and

6    claims $21,959.06 in costs and expenses.  (Doc. No. 48-1 at 6; Doc. No. 48-2 at 8.)

7         The results achieved in this case are favorable.  Class members are provided with

8    immediate monetary and injunctive relief, and the overall award is substantial.

9    Additionally, the risks of litigation were real and substantial.  Further, the complexity

10   and potential duration of the case, coupled with the intensity of settlement negotiations,

11   indicate that the  award is reasonable.   The Court is familiar with the facts and

12   circumstances of this case.  Under these limited circumstances, the award of 33 and

13   1/3% of the settlement is warranted.  See Vasquez v. Coast Valley Roofing, Inc., 266

14   F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable

15   attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with

16   25% considered the benchmark").  Class counsel took this case on a contingent fee

17   basis, bearing the entire risk and cost of litigation. (Doc. No. 48-1 at 8-10.)  In light of

18   the risks borne by class counsel, the quality of representation, and the resulting

19   settlement agreement, the award is reasonable.

20        The settlement administrator requests payment of $5,500. (Doc. No. 49-3, Burch

21   Decl. at ¶ 19.) The Court notes that the original estimate was $10,000. (Doc. No. 41-1

22   at 8.)  Plaintiff's request is reasonable.

23        For these reasons, the Court concludes that an award of attorneys' fees of

24   $400,000 and costs of $21,959.06 are reasonable and warranted in this case.  The Court

25   further concludes that settlement administration fee in the amount of $5,500 is

26   reasonable.  Accordingly, the Court grants Plaintiff's request for attorneys' fees, costs

27   and expenses, and settlement administrator fees.

28   / / /

**IV.    Incentive Payment to Class Representative**

Finally, the $15,000 incentive award for Plaintiff is reasonable.  "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."  Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

After reviewing the factors announced in Van Vranken, the Court concludes that the requested incentive award for the named Plaintiff is reasonable.  The $15,000 award is within the acceptable range awarded in similar cases.  See, e.g., Fulford v. Logitech, Inc., No. 08-CV-02041, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000).  The named Plaintiff advanced the interests of the absent class members by engaging in investigation and discovery, attending depositions, refusing the tender offer, and assisting counsel with other aspects of the case.  (Doc. No. 49-3, Burch Decl. at ¶¶ 20-27.)  Accordingly, the Court approves the $15,000 incentive award for Plaintiff Haukland.

**Conclusion**

For the reasons stated above, it is ordered that:

1.    This Judgment incorporates by reference the definitions in the Settlement Agreements filed with the Court on February 26, 2015 (Doc. No. 42-2) and all terms used in this Judgment shall have the same meanings as set forth in the Settlements.

2.    The Court has jurisdiction over the subject matter of this action and all parties to the action.

3.    The Court certifies the California Class as: All hourly workers employed by Defendant who were paid at "straight time" rates for hours

worked in California in excess of 8 in a day and/or 40 in a week during the California Claims Period from January 21, 2010 to June 30, 2014 and who do not opt out of the certified class as set forth in Paragraph 11 of this Agreement.

4.   The Court certifies the FLSA Collective as: All hourly workers employed by Defendant in the states of Connecticut, Illinois, Iowa, Maryland, Pennsylvania, New York, South Carolina and Utah who were paid at "straight time" rates for hours worked in excess of 40 in a week from February 19, 2012 to June 30, 2014 (the "FLSA Claims Period") and who opt into the FLSA Collective during the opt-in period set forth in Paragraph 11 of this Agreement.

5.   All Persons who satisfy the California Class, except those class members who timely and validly excluded themselves from the settlement, and all persons who satisfy the FLSA Collective and opted in to the settlement are bound by this Judgment.

6.   The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, including the Due Process Clause.

7.   No part of the Settlements, this Judgment, nor the fact of the settlement constitutes any admission by any of the Parties of any liability, wrongdoing or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Litigation.

8.   Class Counsel is awarded $421,959.06 in attorneys' fees, costs, and expenses.

9.   The Plaintiff Class Representative is entitled to an incentive award of $15,000.

10.   The Settlement Administrator is entitled to costs of $5,500.  The attorneys' fees and expense award, Plaintiff's incentive award, and the

1               Settlement Administrator costs are to be paid in accordance with the

2               Settlement Agreement.

3     11.    Without affecting the finality of this Judgment, the Court reserves

4               jurisdiction over the implementation, administration, and enforcement

5               of this Judgment and the Settlement, and all matters arising thereunder.

6     12.    This document shall constitute a judgment for purposes of Rule 58 of

7               the Federal Rules of Civil Procedure.  Final Judgment in this action is

8               entered.  The Court dismisses with prejudice the action, and all

9               Released Claims against each and all Released Persons and without

10              costs to any of the Parties as against the others.

11     **IT IS SO ORDERED.**

12 DATED: July 27, 2015

13                               _____

14                               MARILYN L. HUFF, District Judge
                                    UNITED STATES DISTRICT COURT

14cv145